W. C. WILSON, Appellee, v. FRED E. WILSON et al., Appellants.

**DEEDS: Action to Set Aside—Fraud—Widow's Misconception of Rights.** Quitclaim deeds to all. the interest of an aged widow in her husband's estate are necessarily fraudulent, when obtained for a grossly inadequate consideration by a devisee who sedulously cultivated a very material misunderstanding on the part of the widow as to the extent of her interest, and so shaped matters that she would not be set aright.

*Appeal from Dallas District Court.*—H. S. DUGAN, Judge.

NOVEMBER 22, 1921.

ACTION in equity. The opinion sufficiently states the case. Decree for plaintiff as prayed, and defendant and intervener appeal.—*Reversed.*

*White & Clarke* and *Parsons & Mills*, for appellants.

*D. H. Miller* and *Burton Russell*, for appellee.

WEAVER, J.—It is not an altogether easy task to condense the issues in this case into a brief and clear statement. In general outline, the controversy arises as follows: In September, 1916, William H. Wilson, then a widower, and a resident of the town of Adel, executed a will. He had four children: one

daughter, Bertha; and three sons, W. C. Wilson, who is plaintiff herein, and Fred and Jesse, defendants. By the terms of the will, he gave to Bertha the sum of $600, and all the residue of his estate to his sons in equal shares. Soon after the making of the will, the testator married Sarah Wilson, who is the intervener in this case. On November 6, 1918, the testator died, having never revoked or modified his will. A few days later, the son W. C., the only one of the family living in Dallas County, obtained from the widow, in consideration of the sum of $1,000 paid to her, three separate quitclaim deeds of all her right, title, and interest in the real estate of which the testator died seized; also a written agreement and written assignment, purporting to be a full and complete transfer to the said W. C. of all of the widow's statutory right, title, and interest in or to the estate of her deceased husband. This action was thereafter brought by W. C., for a partition of the town property in Adel. The plaintiff's brothers, Fred and Jesse, were named as defendants in the proceeding; and thereafter, the widow of the testator intervened, alleging that the conveyances made by her to W. C. were fraudulently obtained by him, and asking that they be canceled.

The defendants Fred and Jesse answered, admitting plaintiff's right to share equally in the estate under the will of their father, but denying that he acquired any further right, title, or interest in said estate through the conveyances obtained from the widow. The trial court found for the plaintiff; that, as grantee under the deeds from the widow, he acquired title to one third in value of all the estate left by the testator; and that, as devisee under the will of his father, he was vested with a one-third part of the remaining two thirds.

Under the issues as finally joined and tried below, the controlling question in the case is the effect, if any, which is to be given to the transaction between the plaintiff, W. C. Wilson, and the widow, in which the latter executed the deeds and other instruments upon which the plaintiff bases his claim of title to more than an equal share of the estate. The evidence tends to show that, about the time the testator and intervener married, they had some conversation relating to property matters. There was no written antenuptial contract, and indeed, no showing of

any terms of an oral agreement of that character, except as may be implied from the woman's statement as a witness that the testator told her she should have the homestead, and his further statement when, upon reaching the home after the marriage, he said to her (referring to the homestead): "This is yours." There is also evidence that, when he brought his wife to the home in Adel, he told his children, or some of them, that he had given her the homestead.

It appears very satisfactorily that, upon the death of the testator, the widow took it for granted that her interest in his estate was limited to the homestead property, and desired to dispose of it and return to her former home in the state of Washington. That plaintiff knew that the widow supposed her interest in the estate was thus limited, we are fully satisfied. He denies it, and swears he had never heard of it until after he had obtained the deeds to which we have referred, but we do not credit his statement. The brother Fred, who came from Texas at the time of the father's death, testified that, on the day of the funeral, W. C. told him of the arrangement between their father and intervener, by which the widow was to receive only the homestead, and proposed that they (the brothers) should buy her claim to that piece of property, and thus concentrate the entire estate in the children. This witness further says that plaintiff then agreed to go ahead and buy the homestead for the mutual benefit of the brothers. It is true, as we have said, that plaintiff denies this; but many circumstances unite to sustain the story told by Fred. Immediately after the burial of the testator, the plaintiff entered into negotiation with the widow. He says she expressed an anxiety to sell out her interest in the estate at once, and thus enable her to return to Washington, and offered to make such sale for $1,000. He expressed his willingness to buy, if he could raise the money, and told her it would be necessary further to execute a deed or deeds, to effect the deal. He consulted his lawyer, and instructed him to prepare the necessary papers, and a day or two later, he took the widow to the lawyer's office. She had no independent counsel or advice, and was accompanied by no friend or acquaintance, except the plaintiff. The lawyer produced five several papers: (1) A quitclaim deed from her to plaintiff for the town property, for the

expressed consideration of "one dollar and other valuable considerations," and reciting its conveyance of "all the grantor's right, title, and interest" in the property; (2) another quitclaim deed for like consideration and with like recitals, conveying to plaintiff her interest in a farm of 124 acres in Marion County, Iowa; (3) another quitclaim deed for like consideration and with like recital, conveying to plaintiff her interest in 130 acres of land in Kansas; (4) "an article of agreement," by which the widow, in consideration of $1,000, "relinquishes, sells, assigns, and quitclaims to plaintiff all her right, title, interest, and portion in and to the estate of W. H. Wilson, deceased," again describing all the several pieces of real estate, and further agreeing "to execute and deliver to said party of the second part quitclaim deeds to said described tracts of real estate, and to execute to said party of the second part, separate herefrom, written assignment and transfer of all my right, title, and interest and portion in and to the personal property belonging to said estate, it being my intention hereby and by said deeds and said separate assignment to dispose of, sell, and transfer to said party of second part my right of dower and distributive share in and to the real estate and estate of said decedent;" and (5) still another instrument, entitled an "assignment," by which the widow purports to sell, assign, and transfer to plaintiff all her right, title, interest, and portion as surviving widow in and to the estate of her late husband. The plaintiff, as a witness, testifies with much particularity how, with the execution of each of this sheaf of papers, the attorney asked and repeated the inquiry:

"Do you understand now that you are parting with your interest in this estate?"

Again this was emphasized, as follows:

"Now, Mrs. Wilson, you are an old lady, and I want to know if you thoroughly understand what you are signing here, —that you are going to sign these deeds conveying to this man your consideration in this estate for the sum of $1,000?"

Then, as if to make assurance doubly sure, after all these inquiries had been repeatedly asked and answered, the attorney said:

"I want to have a witness or a couple of witnesses sign with her."

Plaintiff went out, and brought in one Ferguson, who, with the attorney, signed the instruments as a witness; and again, in the presence of the witness, the question was put to the woman:

"You understand you are relinquishing all your right to the estate?"

And then, with all the details thus perfected, plaintiff took the woman to the bank, and paid her the promised consideration of $1,000.

As a witness, she swears that she supposed and believed that her interest in the estate was limited to the homestead; and that neither the plaintiff nor his counsel told her otherwise; and that she went through the forms required of her in executing the papers laid before her in the belief that she had no right or interest in the estate except the homestead, and that she was selling and transferring to plaintiff such limited right and interest, and nothing more. There is a measure of corroboration of this statement in the testimony of her stepdaughter, plaintiff's sister, who was then at the family home, and who says that, when the intervener returned from the making of the papers, she told the witness that W. C. had bought her out; that she had *sold him the place and what stuff there was in the house.*

We are satisfied that the weight and value of the testimony as a whole fairly sustain the intervener's contention. It is very difficult to read the testimony concerning the procurement of the writings on which plaintiff relies, without becoming thoroughly convinced that the widow executed them with the understanding and under the belief, fostered by plaintiff, that "her interest" in the estate of her husband was limited to the homestead; and that she did not for a moment understand that she was conveying to him one third of the entire estate. With that thought possessing her mind, it is not strange, considering her age, inexperience, and ignorance, and the entire absence of independent counsel or advice, if she went through the form of executing the multiplicity of papers presented for her signature, without intelligent comprehension of their legal effect, supposing them to be a part of the formality necessary to accomplish

the one thing in mind, namely, the transfer of her rights in the homestead property. That plaintiff knew of the woman's misunderstanding, and took advantage of it to obtain her conveyance of property rights to the extent of practically $10,000 for the ridiculously inadequate consideration of $1,000, we have no doubt. We are making no finding of fraud against plaintiff's counsel. He asserts that he prepared the papers at plaintiff's request, without any knowledge of the widow's misunderstanding; and that his first knowledge of the consideration to be paid her was when she came in to complete the transaction; and that, when he was told to make the consideration $1,000, he was himself greatly surprised at its manifest inadequacy. Under such circumstances, the extent of the criticism to which he exposed himself is to be found in the fact that he did not, upon making such discovery, at once insist that the woman take independent advice, before thus sacrificing her property rights.

There are but two reasonable theories upon which to account· for the attitude and conduct of the widow in this transaction: First, that she voluntarily elected to waive her statutory rights in her husband's estate, and to recognize the validity of the alleged oral understanding by which she was to accept the homestead alone; or, second, that she was grossly imposed upon in the procurement of the conveyances to the plaintiff. If the first condition is shown, then her waiver necessarily inured to the benefit of the testator's three sons in equal shares, under the terms of his will. If the second condition be established, then the conveyances so fraudulently obtained should be. set aside, and the widow should be confirmed in her statutory portion or share. The trial court announced its decision in an opinion setting forth the course of reasoning which it followed in disposing of the case. We have given it careful consideration, but cannot concur either in its findings of fact or its conclusions upon the equities between the parties. It finds no fraud or wrong upon part of the plaintiff; while we think the transaction in which the deeds were procured is redolent of fraud, and a manifest, unconscionable wrong. This wide divergence of views upon the questions of fact presented by the record necessitates a disapproval of the conclusions announced upon the rights of the parties. The court's method of settling

those rights has at least the merit of novelty. It first deals with the claims of the intervener, and finds that there was an oral antenuptial contract, by which her interest in her husband's estate, if she outlived him, was to be limited to the "homestead and the furnishings." The opinion then proceeds as follows (the italic is ours):

"Without determining the question whether or not there has been any competent testimony introduced to sustain said contract by adopting the intervener's own theory, *we cannot agree with intervener's counsel that the antenuptial contract, while oral, is invalid.* It is provided in this state by Section 4625 of the Code, which is commonly known among the legal profession and generally referred to as the statute of frauds, that no contracts in reference to marriages shall be established except by documentary evidence or evidence in writing, and it is further provided by Section 4628 of the Code that said contract can be established by the oral testimony of the person who is sought to be charged therewith. The original English statute of frauds made such contracts invalid. While our statute does not make them invalid, it simply prohibits the establishment of the same by proof other than that in writing, or by the oral testimony of the person who is sought to be charged with the contract. We therefore hold that said contract, as claimed by the intervener, *is not invalid nor even voidable; but, while there may be no competent evidence before the court to establish said contract, so far as the intervener is concerned, she cannot complain if we adopt her theory* of the case, and adopting her theory of the case for determining that issue, if she had such a contract, then she was not mistaken as to her private rights, and that there was no mistake upon her part as to her interest in said estate, either in law or in fact. *If she did make the contract before her marriage with the decedent, Wilson,—and she claims she did,—such contract, so far as she is concerned, is binding; and she quitclaimed all her interest in all of the real estate to the plaintiff.* She does not claim any unfairness of the contract with the decedent; so she has received all that she bargained for under the promise of marriage, and she testifies that said contract was perfectly satisfactory to her when it was entered into between herself and her husband, and that she at no time at-

tempted to assert the same, until prevailed upon by the defendants in this case.  *  *  *  It is true that dower is a favorite of the law, and this court is always willing to extend the protection of the law to the widow in the preservation of her dower; but in this case her own testimony may be incompetent, and if it is, she cannot complain, as she introduced it. *She is barred by reason of the antenuptial contract.*"

Relying upon the argument thus expressed, the court dismissed the widow's intervention, with costs. Then, having thus eliminated the intervener, the court takes up the issue as between the brothers, and finds that there was *no* competent evidence of the alleged antenuptial contract; and that, as a necessary result of such finding, the widow became vested with a right to a full statutory one-third share in her husband's estate; and that her deeds to plaintiff vested such share in him; and that he alone is entitled to assert it.

This results in giving the canny elder brother five ninths of an estate in which his father had devised him only an equal one third, and enables him to absorb from the estate a matter of $10,000 or more, at an expense to himself of less than a tenth of that sum. But let us look at the route traveled to reach this end. The court first finds that an antenuptial contract *is* established, in spite of the statute of frauds, and declares it is neither "void nor voidable," and that the widow is thereby "barred" to have or assert any statutory right in her husband's estate; and yet, in the same connection, it points out that this widow, having barred herself from having or claiming any such interest, has quitclaimed it to the plaintiff. If she had no right to a statutory share, what did she quitclaim? And if she assumed to quitclaim that in which she had no interest, what did the plaintiff acquire by it? Let us, then, note the maze of inconsistency into which the next step leads. The court, having to its own satisfaction found proof of an antenuptial contract that was neither void nor voidable, and strong enough to effectually bar the widow from claiming a statutory portion of the estate, immediately finds, in behalf of plaintiff, that there is *no* evidence of any such contract, and that she must be held to have become entitled to her full statutory share in the estate, thus affording the plaintiff the opportunity to relieve her of the

burden of this unexpected wealth, at a cost to himself of less than 10 cents on the dollar. In other words, in the same case, with the same issues, and same dispute over the same subject-matter, on the same evidence, and in the same decree, it is adjudged that a valid antenuptial contract *was* established, and that a valid antenuptial contract was *not* established. We assume that this agile facing-about has its explanation in the theory that adopting the expedient of first considering the widow's case and casting it into the discard before determining the issues between the brothers had the effect in some way to segregate or separate the disputes into separate, independent proceedings, and that evidence which might be material and competent in one might not be admissible in another. But we think the effect of evidence upon any issue presented by the pleadings is not to be thus avoided. Evidence, once properly admitted upon the trial, remains evidence for the benefit of all the parties, including the defendants, and is not to be eliminated by the expedient of so framing the decree as to dismiss the intervention before entering upon the consideration of the rights of the defendants.

The trial court lays considerable stress upon the plaintiff's claim that, when he took the deeds from the widow, he had no knowledge that she was ignorant or self-deceived as to the extent of her rights in the estate. The thought seems to be that, even if the widow had estopped or barred herself from claiming her full statutory share, and if plaintiff, not knowing the fact, took the deeds, believing that he was thereby obtaining title to the one third of the estate, he is entitled to some sort of protection, as an innocent purchaser. There is no merit in the suggestion. The deeds are purely quitclaim in form and in effect. The grantor binds herself by no covenants of warranty. She does not thereby promise or profess to quitclaim anything except "her interest" in the property; and if the court was right in holding that, by antenuptial contract, she had bound herself to accept the homestead in full consideration for the relinquishment of her statutory share, then the homestead was all she had power to sell or convey to anyone, and it was all that her quitclaims could by any possibility vest in the plaintiff.

Taking the record as a whole, however, we are disposed to

the view that no valid or binding antenuptial contract has been shown; that the widow has never voluntarily waived or relinquished her right to her statutory portion in her husband's estate; that the quitclaims and contracts by which she undertook to transfer all her rights to the plaintiff are voidable for fraud, and imposition practiced by him in their procurement, and should be canceled and set aside; that the intervener must be adjudged entitled to take her statutory share in her husband's estate; and that, subject to the widow's right so established, and the payment of the legacy provided by the will for Bertha Waller, and payment of the just claims, if any, against said estate, the plaintiff, W. C. Wilson, and defendants Fred Wilson and Jesse Wilson must be adjudged the owners each of an equal one-third part of all the property of which the testator, William H. Wilson, died seized or possessed. The decree should further provide for the repayment to the plaintiff by the intervener of the sum of $1,000, without interest, within 60 days from the filing of such decree, and that, until so paid, it shall constitute a lien on the intervener's share in the estate of the deceased.

The decree appealed from is reversed, and cause remanded to the trial court for decree settling the rights of the parties in harmony with this opinion, and for such further proceedings as may be found necessary, to effect a partition of the property in accordance therewith. The costs of intervention and three fourths of all other costs will be taxed to the plaintiff, and the remainder to defendants.—*Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.